Diego **CATANO**, Petitioner,

v.

**UNITED STATES of America,**
Respondent.

No. 02–60048–CR–ZLOCH.

United States District Court,
S.D. Florida.

Feb. 19, 2003.

Bruce L. Udolf, Theresa M.B. Van Vliet, Ruden, McClosky Smith Schuster & Russell, Fort Lauderdale, FL, for Petitioner.

Roger Powell, United States Attorney's Office for the Southern District of Florida, Fort Lauderdale, FL, for Respondent.

## ORDER

ZLOCH, Chief Judge.

THIS MATTER is before the Court upon the Petitioner, Diego Catano's Petition Pursuant To Title 18 U.S.C. Section 3006A ("Hyde Amendment") For Attorney's Fees And Costs (DE 194). The Court has carefully reviewed said Petition, the entire court file and is otherwise fully advised in the premises.

### I. *Background*

The Court notes that Diego Catano's (hereinafter "Catano") petition seeks attorneys' fees and costs relating to the criminal prosecution of Catano by the Office of the United States Attorney for the Southern District of Florida (hereinafter the "Government") for conspiracy to import into the United States and conspiracy to possess with the intent to distribute controlled substances. As grounds for his petition, Catano claims that the prosecution was "vexatious, frivolous and in bad faith" and, thus, he is entitled to attorneys'

fees and expenses pursuant to Pub.L. No. 105–119, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes) (hereinafter the "Hyde Amendment").

The Court notes that on February 27, 2002, Catano was arrested by agents of the federal Drug Enforcement Agency (hereinafter "DEA") in Miami, Florida.[1] The Court further notes that on September 18, 2002 Catano was acquitted by a jury on all counts related to his February 27, 2002 arrest.

Based on the evidence presented at trial, on the morning of February 27, 2002, a confidential informant (hereinafter "CI") working with the DEA on a drug importation investigation received a call from an individual known to the CI as Alvaro who the DEA, based on their experience in this investigation, suspected to be a leader of a drug importation organization. Alvaro directed the CI to contact Catano, arrange to meet and, on behalf of Marcos—another suspected leader of the conspiracy—to give Catano money the CI had received from other members of the drug importation conspiracy. A series of phone calls throughout the day establish that Catano knew the CI had money for him from Marcos and that the CI and Catano would meet in a bank parking lot in South Beach, Miami, Florida.

As noted in Catano's Petition, during the meeting, Catano never got out of his car, kept the car in reverse, accepted—without inspection—a bag holding a shoebox containing approximately $18,000 from the CI and immediately began backing out of the parking area. Discussing the money,[2] the

---

1. The Court notes that there is some disagreement between Petitioner and the Government about the order in which certain events took place. For the purpose of this Petition, unless otherwise noted as based on the Court's own review of the evidence at trial, the Court adopts the facts presented in the Petition.

2. For the purpose of this Order, the Court adopts Catano's argument that this discussion occurred after Catano accepted the bag of money.

CI implied that it was derived from a drug transaction and suggested that the next transaction should involve a larger amount of drugs. In response, Catano made the following statements: "Oh, no, I don't, I don't know nothing about ...", "It's not my business", "That's not my business" and "This is uh, he owes me this money." As seen on the videotape during trial, Catano's car then accelerated in reverse, but Catano was stopped by DEA agents and arrested. After his arrest Catano told DEA agents that Marcos Orozco, an individual in Colombia, owed him money for past computer sales and that he was going to use the money to buy computers.

Catano was indicted by the Grand Jury on March 12, 2002 (DE 12). The DEA case agent assigned to this matter testified before the Grand Jury regarding the events leading up to Catano's arrest. The DEA agent testified that during the meeting in which the CI handed Catano, through the window of his car, a bag full of money, Catano, in response to the CI's implication that the money was derived from a drug transaction and that the next transaction should be for a larger amount of drugs, stated "well, that's not my end, or that's not my side of the business". Later, on April 30, 2002, a Superceding Indictment was returned (DE 73). In testifying before the Grand Jury regarding the Superceding Indictment, the DEA agent testified that he had reviewed his previous testimony and that it was true and correct. On September 6, 2002 Catano filed his Motion to Dismiss The Indictment With Prejudice On The Grounds Of Government Misconduct Before The Grand Jury (DE 153). Catano argued, in his Motion, that the DEA agent in his testimony to the Grand Jury mischaracterized Catano's pre-arrest statements to the CI. Prior to the commencement of trial, the Court heard oral argument regarding Catano's Motion To Dismiss and *denied the motion from the bench.* On September 20,

2002, following Catano's acquittal by the jury, the Court issued a written Order denying Catano's Motion To Dismiss as moot (DE 178), since the Court had already ruled on same.

At the close of the Government's case, on September 13, 2002, the Court denied Catano's ore tenus Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure (DE 163). Additionally, at the close of all the evidence, on September 17, 2002, the Court denied Catano's renewed Rule 29 motion (DE 168).

Finally, the Court notes that prior to Catano's trial, Catano and the Government discussed the possibility of resolving this matter pursuant to a plea agreement. Both Catano and the Government acknowledge that during plea negotiations the issue of Catano's potential indictment for money laundering was raised. Catano argues that he was given insufficient information about the threatened money laundering indictment with which to determine the appropriateness of a plea. The Government counters that limited information was available at the time but the potential for indictment was real.

## II. *Discussion*

The Hyde Amendment provides that

the court, in any criminal case ... may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless such circumstances make such an award unjust.

Pub.L. No. 105–119, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes). The Eleventh Circuit following an exhaustive review of the plain meaning of the language of the Hyde Amendment and its legislative histo-

ry interpreted the language "vexatious, frivolous, or in bad faith" as a "daunting obstacle before defendants who seek to obtain attorney fees and costs from the government following a successful defense of criminal charges." *United States v. Gilbert*, 198 F.3d 1293, 1302–03 (11th Cir. 1999).

The *Gilbert* Court defined vexatious as "without reasonable or probable cause." *Id.* at 1298 (*citing* Black's law Dictionary 1559 (7th ed.1999) and *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)). The Eleventh Circuit continued its analysis defining a frivolous action as one that is "groundless ... with little prospect of success; often brought to embarrass or annoy the defendant." *Id.* at 1299 (*citing* Black's law Dictionary 668 (6th ed.1990)). Lastly, bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with a furtive design or ill will." *Id.* (*citing* Black's law Dictionary 139 (6th ed.1990) and *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). Thus in accordance with the plain meaning of the language of the statute "a lot more is required under the Hyde Amendment than a showing that the defendant prevailed at the pre-trial, trial, or appellate stages of the prosecution." *Id.*

As the Court determined in denying Catano's two (2) Rule 29 Motions for Judgment of Acquittal, the prosecution of Catano was neither vexatious or frivolous. The connection to Catano arose directly from the CI's involvement with an established drug importation conspiracy. In fact, a leader of the conspiracy directed the CI to contact Catano and give him money derived from the conspiracy. Catano, moreover, willingly and under suspicious circumstances took the money on behalf of Marcos, a leader of the conspiracy. The Court, therefore, finds that, while ultimately insufficient to satisfy the jury of Catano's guilt beyond a reasonable doubt, the facts as set forth in the instant Petition and those admitted at trial demonstrate a "reasonable or probable cause" to pursue this prosecution and were not "groundless" even if the probability of a guilty verdict was slim.

Catano focuses his bad faith argument solely on Assistant United States Attorney Roger Powell,[3] who was responsible for indicting and trying Catano and the other accused conspirators in this case. More specifically, Catano argues that Powell misrepresented evidence to the Grand Jury, the trial jury and the Court and, further, that Powell threatened Catano with non-existent evidence in an attempt to convince Catano to enter a guilty plea. The Court finds, however, no evidence of "furtive design or ill will". As noted above, the prosecution of the case against Catano was neither vexatious nor frivolous. Powell may have been mistaken in his interpretation of and his arguments concerning Catano's statements to the CI but Catano has not shown that Powell committed a "conscious ... wrong because of dishonest purpose or moral obliquity." *Gilbert*, 198 F.3d at 1299. At the time of his statements, Catano accepted a bag full of cash through the open window of his car which was running and in reverse, he was informed (if he did not already know) that the money was connected to a drug transaction, and he then accelerated his car so as to leave the scene with the cash. In sum, Powell's representations regarding

---

3. The Court notes that Catano argues in his Petition that neither the DEA case agent (Pet. at p. 24) nor Powell's supervisors at the Ft. Lauderdale office of the United States Attorney's Office (Pet. at ¶ 8, pp. 5–6) acted in bad faith.

the meaning of these statements were not in bad faith.

Catano additionally argues that Powell committed bad faith by introducing the threat of indictment for money laundering into discussions of a plea bargain in the instant case. The Court notes that in its Response to Catano's instant Petition, signed by Powell, the United States provides information concerning an ongoing money laundering investigation of Catano and others which was neither relevant to Catano's trial as a member of a drug conspiracy nor previously known to the Court. The Court further notes that the money laundering investigation was conducted by Internal Revenue Service agents and an Assistant United States Attorney not involved in prosecuting Catano for the instant drug conspiracy. While Catano complains that Powell provided little information regarding the investigation, it is not clear that Powell had more information or was authorized to disclose that information at the time of his plea negotiations with Catano.

### III. *Conclusion*

Catano's relationship to the instant drug conspiracy was not the creation of Government agents or AUSA Powell. Catano was inserted into the transactions surrounding the conspiracy by Alvaro, an established leader of the conspiracy, when Alvaro called the CI and directed the CI to contact Catano and give Catano money on behalf of Marcos, another leader of the conspiracy. The Government prosecuted Catano based on those facts. Powell was entitled to be a "zealous advocate[ ] of the law on behalf of [his] client, the people of the United States." *Gilbert,* 198 F.3d at 1303. The prosecution, while ultimately insufficient to convince a jury of Catano's guilt beyond a reasonable doubt, was not vexatious, frivolous or in bad faith.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that the Petitioner, Diego Catano's Petition Pursuant To Title 18 U.S.C. Section 3006A ("Hyde Amendment") For Attorney's Fees And Costs (DE 194) be and the same is hereby **DENIED**.